**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA
SOUTHWESTERN DIVISION**

| | | |
|---|---|---|
| Harleysville Insurance Company, | ) | |
| | ) | |
| Plaintiff, | ) | **ORDER GRANTING MOTION TO DISMISS** |
| | ) | **CITY OF WOLF POINT, MONTANA,** |
| vs. | ) | **FOR LACK OF PERSONAL JURISDICTION** |
| | ) | |
| Martin Construction, Inc., Kurt Martin, and the City of Wolf Point, Montana, | ) | |
| | ) | Case No. 1:11-cv-011 |
| Defendants. | ) | |

Before the Court is a Motion to Dismiss for Lack of Personal Jurisdiction filed by Defendant City of Wolf Point, Montana ("Wolf Point"), on August 1, 2011. For the reasons set forth below, the motion is granted.

**I.   BACKGROUND**

Plaintiff Harleysville Insurance Company ("Harlesyville") is a Pennsylvania corporation licensed to do business in North Dakota. Its products are sold in North Dakota by local, independent insurance agents.

Defendant Martin Construction, Inc. is a North Dakota corporation with its principle place of business in Gladstone, North Dakota. Its owner, Kurt Martin, is a resident of Gladstone, North Dakota.[1]  Beginning in approximately 2004, and continuing through approximately 2008, Martin Construction purchased commercial insurance containing various coverages and endorsements from Harleysville through American Insurance Company, Inc., a Dickinson, North Dakota, agency. Wolf

---

[1] For the purposes of this order Martin Construction, Inc. and Kurt Martins shall be collectively referred to as "Martin Construction."

1

Point is a municipality located in Roosevelt County, Montana. (Id. at ¶ 3). In June 2004, it contracted with Martin Construction to construct two aeration lagoons and a compressor station.

According to Wolf Point, the aeration system constructed by Martin Construction has never worked properly. In March 2010, it filed suit against Martin Construction in Montana's fifteenth judicial district court, asserting that Martin Construction had: (1) breached the parties' contract; (2) breached its duty of good faith and fair dealing; (3) breached an implied warranty of merchantability and implied warranty of fitness for a particular purpose; and (4) supplied non-conforming and defective goods. Martin Construction filed a counterclaim against Wolf Point as well as a third-party complaint against several of its subcontractors. The case was ultimately removed to the United States District Court for the District of Montana.

In January 2011, Harleysville initiated the above-entitled action, seeking a declaration from this Court that it is not contractually obligated to defend, pay damages on behalf of, or otherwise indemnify Martin Construction for the claims made by Wolf Point. It joined Wolf Point as a defendant.

On August 1, 2011, Wolf Point filed a Motion to Dismiss for Lack of Personal Jurisdiction with this Court. On August 22, 2011, Harleysville filed a response in opposition to Wolf Point's motion. On September 1, 2011, Wolf Point filed a reply in support of its motion. Consequently, the jurisdictional issue raised by Wolf Point has been fully briefed and the motion is ripe for the Court's consideration.

## II. STANDARD OF REVIEW

"To defeat a motion to dismiss for lack of personal jurisdiction, the nonmoving party need only make a prima facie showing of jurisdiction." Epps v. Stewart Information Services Corp., 327 F.3d 642, 647 (8th Cir. 2003) (citing Falkirk Min. Co. v. Japan Steel Works, Ltd., 906 F.2d 369, 373 (8th Cir. 1990); Watlow Elec. Mfg. v. Patch Rubber Co., 838 F.2d 999, 1000 (8th Cir. 1988)). "The plaintiff's prima facie showing must be tested, not by the pleadings alone, but by the affidavits and exhibits presented with the motions and in opposition thereto." Dever v. Hentzen Coatings, Inc., 380 F.3d 1070, 1072 (8th Cir. 2004). The party seeking to establish the court's in personam jurisdiction carries the burden of proof, and the burden does not shift to the party challenging jurisdiction. Epps, 327 F.3d 642, 647 (citations omitted).

## III. LEGAL DISCUSSION

As a preliminary matter, it should be noted that this action is in federal court based on diversity jurisdiction. See 28 U.S.C. § 1332(a). Under Rule 4(k)(1)(A) of the Federal Rules of Civil Procedure, a federal district court in a diversity action will have personal jurisdiction over a non-resident defendant to the extent permissible under the law of the state in which the district court sits. Dean v. Oibas, 129 F.3d 1001, 1003 (8th Cir. 1997). Therefore, when a federal court sits in diversity, the analysis for personal jurisdiction involves two steps: (1) whether the forum state would accept jurisdiction under the facts of this case; and (2) whether the exercise of jurisdiction comports with constitutional due process restrictions. Lakin v. Prudential Securities, Inc., 348 F.3d 704, 706-07 (8th Cir. 2003) (citing Sondergard v. Miles, Inc., 985 F.2d 1389, 1392 (8th Cir. 1993)). To

3

satisfy the first step of the jurisdictional analysis, the Court will address the relevant North Dakota provisions governing personal jurisdiction over non-resident defendants.

The jurisdiction of North Dakota courts is governed by Rule 4(b)(2) of the North Dakota Rules of Civil Procedure. The North Dakota Supreme Court has held that Rule 4(b)(2) "authorizes North Dakota courts to exercise jurisdiction over nonresident defendants to the fullest extent permitted by due process . . . ." Hansen v. Scott, 645 N.W.2d 223, 230 (N.D. 2003) (citing Auction Effertz, Ltd. v. Schecher, 611 N.W.2d 173 (N.D. 2000); Hust v. Northern Log, Inc., 297 N.W.2d 429, 431 (N.D. 1980)). Because Rule 4(b)(2) grants jurisdiction to the fullest extent permitted by the Constitution, the two-step test collapses into a single question of whether the exercise of personal jurisdiction comports with due process. Johnson v. Woodcock, 444 F.3d 953, 955 (8th Cir. 2006); Oriental Trading Co, Inc. v. Firetti, 236 F.3d 938, 943 (8th Cir. 2001); Bell Paper Box, Inc. v. U.S. Kids, Inc., 22 F.3d 816, 818 (8th Cir. 1994); see Hansen v. Scott, 645 N.W.2d 223, 232 (N.D. 2002) (recognizing that a federal court sitting in diversity may collapse the two-step framework under North Dakota law).

"Due process requires minimum contacts between [a] non-resident defendant and the forum state such that maintenance of the suit does not offend traditional notions of fair play and substantial justice." Dever v. Hentzen Coatings, Inc., 380 F.3d 1070, 1073 (8th Cir. 2004) (citing Burlington Indus., Inc. v. Maples Indus., Inc., 97 F.3d 1100, 1102 (8th Cir. 1996); World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 291-92 (1980)). There are two categories of minimum contacts with a state that may subject a defendant to jurisdiction in that forum, i.e., general and specific. With respect to general jurisdiction over a defendant, "a court may hear a lawsuit against a defendant who has 'continuous and systematic' contacts with the forum state, even if the injuries at issue in

the lawsuit did not arise out of the defendant's activities directed at the forum." Dever, 380 F.3d 1070, 1073 (quoting Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 415-16 (1984)). A state has specific jurisdiction over a defendant when the suit arises out of, or is related to, the defendant's contacts with the forum state. Id.

Both categories of minimum contacts require some act by which the defendant purposely avails himself or herself of the privilege of conducting activities within the forum state, and thus invokes the benefits and protections of its laws. Id. If a court determines that a defendant has minimum contacts with the forum state, the court must then consider "'whether the assertion of personal jurisdiction would comport with fair play and substantial justice.'" Id. (quoting Burger King Corp. v. Rudzewicz, 471 U.S. 462, 476 (1985)).

The Eighth Circuit has established five factors that must be considered in determining whether sufficient minimum contacts exist for personal jurisdiction: (1) the nature and quality of a defendant's contacts with a forum state; (2) the quantity of such contacts; (3) the relation of the cause of action to the contacts; (4) the interest of the forum state in providing a forum for its residents; and (5) the convenience of the parties. Id. at 1073-74 (citing Burlington Indus., Inc. v. Maples Indus., Inc., 97 F.3d 1100, 1102 (8th Cir. 1996)). In determining whether a defendant has sufficient contacts with the forum state to exercise personal jurisdiction, the court must consider all of the contacts in the aggregate and examine the totality of the circumstances. See K-V Pharm. Co. v. J. Uriach & CIA, S.A., 648 F.3d 588, 592-93 (8th Cir. 2011) ("Although the first three factors are the primary factors, and the remaining two are secondary factors, we look at all of the factors and the totality of the circumstances in deciding whether personal jurisdiction exists." (internal

quotations omitted)); see also Northrup King Co. v. Compania Productora Semillas Algodoneras, S.A., 51 F.3d 1383, 1388 (8th Cir. 1995).

With respect to role of contracts in the personal jurisdiction analysis, the Eighth Circuit has further instructed that

> [a] contract between a plaintiff and an out-of-state defendant is not sufficient in and of itself to establish personal jurisdiction over the defendant in the plaintiff's forum state. Personal jurisdiction, moreover, does not turn on mechanical tests or on conceptualistic theories of the place of contracting or of performance. The Supreme Court has instead emphasized the need for a highly realistic approach that recognizes that a contract is ordinarily but an intermediate step serving to tie up prior business negotiations with future consequences which themselves are the real object of the business transaction. It is these factors–prior negotiations and contemplated future consequences, along with the terms of the contract and the parties actual course of dealing–that must be evaluated in determining whether the defendant purposefully established minimum contacts within the forum.

K-V Pharm. Co. v. J. Uriach & CIA, S.A., 648 F.3d 588, 592-93 (quoting Burger King, 471 U.S. at 479 (internal quotations omitted)).

### A. The Nature, Quality, and Quantity of Contacts with the Forum State

In regards to the first factor, the nature and quality of the contacts with the forum state, the primary issue is whether a non-resident defendant "[has] fair warning that a particular activity may subject a person to the jurisdiction of a foreign sovereignty." Gould v. P.T. Krakatau Steel, 957 F.2d 573, 576 (8th Cir. 1993) (citing Shaffer v. Heitner, 433 U.S. 186, 204 (1977)). The fair warning requirement will be satisfied if the defendant has "purposefully directed" his or her activities at the residents of the forum state. Id. (citing Burger King, 471 U.S. at 472. The contact(s) with the forum state must be more than "random, fortuitous, or attenuated." Id. The contact(s) must not be the result of "unilateral activity of another party or a third person." Id.

Wolf Point maintains that it did not purposefully set out to contract with a North Dakota resident and that its contact with North Dakota is insufficient to constitute a basis for personal jurisdiction. It stresses: (1) it did not purposefully set out to advertise in North Dakota; (2) it did not set up any offices, retain any agents, or otherwise conducted any business in North Dakota; (3) Martin Construction's residency was not a factor in contract negotiations; (4) its underlying suit against Martin Construction was filed in Montana; and (5) the work at issue in the underlying suit was performed in Montana.

In response, Harleysville asserts that Wolf Point had fair warning that it was amenable to suit in North Dakota by virtue of its contractual relationship with Martin Construction. In so doing, it asserts that its contract with Martin Construction was similar in spirit to the contract at issue in K-V Pharm. Co. v. J. Uriach & CIA, S.A., 648 F.3d 588 (8th Cir. 2011) (hereinafter referred to as "K-V Pharm.").

In K-V Pharm., a Missouri-based pharmaceutical manufacturer, KV, filed suit in Missouri against its Spanish supplier of an antifungal agent, Uriach, for breach of contract and misappropriation of trade secrets pursuant to a choice of law provision set forth in the parties' contract. Uriach moved to dismiss for lack of personal jurisdiction. The district court granted the motion, concluding that neither Uriach's contacts with Missouri nor the contract's choice of law provision were sufficient to establish personal jurisdiction. The Eighth Circuit reversed the district court's decision on appeal, reasoning that the parties' negotiations and actual course of dealings, when examined in conjunction with the terms of the parties' contract, were sufficient to the requisite minimum contacts. It reasoned:

> The totality of the circumstances convinces us that the minimum contacts necessary to confer personal jurisdiction over Uriach exist in the present case. Uriach's actual

> contacts with Missouri include its officials coming to Missouri in September 2001 to renegotiate the contract with KV, its paying money to KV as agreed in the contract, and its exchanging many letters, emails, and telephone calls with KV throughout the 12 years that the contract was in existence. Moreover, Uriach expected to have even more extensive contacts with Missouri, as the terms of the contract demonstrates. These considerations tip the scales in favor of the forum state in the first two factors–(1) the nature and quality of the contacts, and (2) the quantity of the contacts.

K-V Pharm, 648 F.3d at 594-95.

Wolf Point and Martin Construction, like the parties in K-M Pharm., conducted contract negotiations over state lines by telephone and email. Wolf Point also made periodic or progress payments to Martin Construction. However, that is where the similarities between the parties in this action and those in K-V Pharm. Co. end. Wolf Point did not actively seek out any North Dakota residents, transact business in North Dakota, or send any representatives to North Dakota. It did not have a decades long relationship with Martin Construction. The terms of its contract with Martin Construction do not demonstrate an expectation of ongoing contact with North Dakota. Finally, aside from the fact that Martin Construction is located in North Dakota, the substance of the contract between Wolf Point and Martin Construction has no substantial connection with North Dakota.

The mere existence of a contractual relationship between Wolf Point and Martin Construction is insufficient to establish personal jurisdiction. Likewise, the fact that Wolf Point may have conducted negotiations or otherwise contacted Martin Construction by telephone and email is, in and of itself, "insufficient to justify exercise of personal jurisdiction under the due process clause." Porter v. Berall, 293 F.3d 1073, 1076 (8th Cir. 2002) (citing T.J. Raney & Sons, Inc. v. Sec. Sav. & Loan Assoc., 749 F.2d 523, 525 (8th Cir. 1984)); Digi-Tel Holdings, Inc. v. Proteq Telecommunications (PTE), Ltd., 89 F.3d 519, 523 (8th Cir. 1996) (holding that although defendant "sent numerous letters and faxes and made several telephone calls to Minnesota," "these contacts

do not create a 'substantial connection' to Minnesota"). Given the nature of the contract and course of dealings between Wolf Point and Martin Construction, the Court concludes that Wolf Point's contacts with North Dakota are too attenuated to weigh in favor of personal jurisdiction.

### B. Relation of the Contacts to the Cause of Action

The above-entitled action arises from the terms of Martin Construction's insurance policy with Harleysville. What little contact Wolf Point had with Martin Construction in North Dakota has no bearing on Martin Construction's insurance coverage. In fact, Wolf Point's presence as a party in this case is not necessary for the Court to render a decision regarding the scope of Martin Construction's coverage. Wolf Point's only link to this declaratory judgment action is that it could conceivably benefit under Martin Construction's insurance policy should it prevail in the action now pending in Montana. Consequently, this factor does not weigh in favor of personal jurisdiction.

### C. Interest in the Forum State and Convenience of the Parties

It is well-established in the Eighth Circuit that the first three factors as outlined above are of "primary importance," and the last two factors are of "secondary importance." Stanton v. St. Jude Medical, Inc., 340 F.3d 690, 694 (8th Cir. 2003); Northrup King Co. v. Compania Productora Semillas Algodoneras, 51 F.3d 1383, 1388 (8th Cir. 1995); Aaron Ferer & Sons Co. v. American Compressed Steel Co., 564 F.2d 1206, 1210 n.5 (8th Cir. 1977). The interest of the forum state is the fourth factor to be considered for purposes of exercising personal jurisdiction.

North Dakota has an interest in providing a forum for its residents. See Aylward v. Fleet Bank, 122 F.3d 616, 618 (8th Cir. 1997) (quickly dispensing with this part of the test by assuming the forum state has an interest in providing a forum for its residents). See Drayton Enterprises, LLC v. Dunker, 142 F. Supp. 2d 1177, 1186 (D.N.D. 2001). Neither Harleysville nor Wolf Point are

"residents" of North Dakota and the outcome of this litigation does not touch on the merits of Wolf Point's claims against Martin Construction.  Consequently, these factors do not weigh heavily in favor of personal jurisdiction.

## IV.	CONCLUSION

The Court finds that the City of Wolf Point has not purposefully availed itself to jurisdiction in North Dakota, and its contact with North Dakota is insufficient to establish personal jurisdiction. Accordingly, the Court **GRANTS** Wolf Point's Motion to Dismiss Motion to Dismiss for Lack of Personal Jurisdiction.

**IT IS SO ORDERED.**

Dated this 16th day of February, 2012.

                                           */s/  Daniel L. Hovland*
                                           Daniel L. Hovland, District Court Judge
                                           United States District Court